## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| TRUDY R. EARNEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:18-cv-00070-AGF |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the

Commissioner of Social Security finding that Plaintiff Trudy Earnest was not disabled,

and thus not entitled to supplemental security income ("SSI") under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381-1383f.   For the reasons set forth below, the

decision of the Commissioner will be reversed and the case remanded for further

proceedings.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of

Uncontroverted Facts (ECF No. 16) and Defendant's Statement of Additional Facts (ECF

No. 23-2).[2]   Together, these statements provide a fair description of the record before the

---

[1]     After this case was filed, a new Commissioner of Social Security was confirmed.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is
substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

[2]     The Court also notes the clarifications supplied in Defendant's Response to
Plaintiff's Statement of Facts.   ECF No. 23-1.

Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born in 1971, filed her application for SSI in April 2013, claiming that she became disabled on July 1, 2007, due to fibromyalgia, allodynia, hyperalgesia, chronic pain, sacroiliac joint pain, sciatica pain and spasms, degenerative disc disease, arthritis, high RH factor, severe musculoskeletal pain, tingling and numbness in feet, shooting pain down legs, and chronic pain in joints. Plaintiff later amended her alleged onset date to March 12, 2013.[3]

Plaintiff's application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ"). On April 29, 2015, the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). On August 2, 2016, the ALJ issued a decision finding that Plaintiff had the residual functional capacity ("RFC") to perform certain jobs that exist in significant numbers in the national economy and was thus not disabled under the Act. Upon judicial review, this Court remanded the case for further consideration and development of the record with respect to Plaintiff's treating sources for functional assessments as to how her impairments affect her ability to engage in specific work-related activities. *Earnest v. Berryhill*, 2:16-CV-00061-CDP, 2017 WL 2535674, at *1 (E.D. Mo. June 12, 2017). The Court also directed the ALJ to base the reassessed RFC

---

[3] Plaintiff also filed an application for disability insurance benefits under Title II of the Act but, upon amending the alleged onset date of disability, she pursued only her application for SSI.

on some medical evidence in the record and include a discussion and description of how

the evidence supports each RFC conclusion.  *Id.* at \*11.

Upon remand, a supplemental administrative hearing was held on December 6,

2017, at which Petitioner, a consulting medical expert, and another VE testified.   By

decision dated April 30, 2018, the ALJ[4] found that Plaintiff had the RFC to perform light

work as defined by the Commissioner's regulations, except for the following limitations:

> the claimant must have a sit/stand option allowing for a change in position
> every thirty to sixty minutes for a few minutes at a time while remaining at
> the work station with no loss in production.   The claimant can never climb
> ropes, ladders or scaffolds.   The claimant can occasionally climb ramps and
> stairs, stoop, kneel, crouch or crawl.   The claimant must avoid concentrated
> exposure to extreme cold, vibration, and work hazards such as unprotected
> heights and being around dangerous moving machinery.   The claimant can
> occasionally reach overhead and can occasionally operate foot controls.
> The claimant can understand, remember and carry out simple instructions
> consistent with unskilled work, in a job with no strict production quotas and
> the claimant would not be subject to the demands of fast-paced production
> work; i.e. work by shift, not by hour.   The claimant can perform simple
> decision-making related to basic work functions.   The claimant can tolerate
> only minor, infrequent changes within the workplace and must avoid work
> involving intense or extensive interpersonal interaction, handling complaints
> or dissatisfied customers, or close proximity to co-workers.   The claimant
> can tolerate occasional interaction with co-workers and supervisors, but no
> contact with the general public.

Tr. 520.

The ALJ next found that Plaintiff could perform certain light unskilled jobs listed

in the Dictionary of Occupational Titles ("DOT") (e.g., marker, office helper, and mail

clerk), which the VE had testified that a hypothetical person with Plaintiff's RFC and

---

[4]     Upon remand, the case was assigned to a different ALJ for disposition.

vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy.   Accordingly, the ALJ found that Plaintiff was not disabled under the Act.[5]

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the whole record because the ALJ failed to follow the instructions on remand. Specifically, Plaintiff argues that the ALJ failed to contact Plaintiff's treating sources for functional assessments and erroneously discredited Plaintiff's complaints of pain.   Thus, Plaintiff contends that the RFC is not supported by substantial evidence in the record as a whole.

**The ALJ's Decision (Tr. 515-529)**

The ALJ found that Plaintiff has the following severe impairments: degenerative disk disease of the cervical spine with remove history of repair surgery, fibromyalgia, obesity, major depressive disorder, and generalized anxiety disorder.   However, the ALJ found that none of these impairments, alone or in combination, met or medically equaled the severity of impairments listed in the Commissioner's regulations.[6]

---

[5]    Plaintiff contends that this was a second denial, and thus Plaintiff elected to forego filing written exceptions with the Appeal Council, instead filing this action with the Court.   It is undisputed by the parties that Plaintiff has exhausted her administrative remedies, and the ALJ's decision is the Commission's final decision subject to judicial review.

[6]    The ALJ further noted that Plaintiff has a medical record of impairments that are non-severe, including hypertension and gastroesophageal reflux disease.   Plaintiff does not challenge these findings.

In applying "paragraph B" criteria, as defined in the Commissioner's regulations for evaluating the severity of medical impairments, the ALJ found that Plaintiff had only mild limitations in understanding, remembering, or applying information, and adapting or managing herself. The ALJ further found moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. As such, the ALJ found that the paragraph B criteria were not satisfied.

In applying "paragraph C" criteria, the ALJ found that, despite Plaintiff's mental health issues, there was no evidence of marginal adjustment in that Plaintiff had not been hospitalized for psychiatric reasons, had not required emergent treatment, and was able to function outside her home without substantial psychosocial supports.

In determining Plaintiff's RFC and limitations,[7] the ALJ reviewed the following evidence. In December 2017, Plaintiff testified that her conditions have left her in a state of chronic pain, and she therefore has difficulties with all physical activities. She testified that she can only walk a short distance but will experience pain the entire time. For example, Plaintiff testified that she can walk around the grocery store when the electric chairs are not available, and she is able to walk to her mailbox. Plaintiff's daughter and aunt help Plaintiff with the housework. Plaintiff stated that she can sit without discomfort for ten minutes and stand without discomfort for twelve minutes.

---

[7]     Plaintiff does not challenge the RFC and limitations as they related to Plaintiff's mental impairments. Therefore, the Court will not detail the ALJ's findings on this point.

She also claims that she can lift two to three pounds, and bending, squatting, or stooping aggravate her pain.

Plaintiff also testified that she still experiences issues with her surgically repaired cervical spine, and she acknowledges that all of her conditions are exacerbated by her obesity. Plaintiff stated that because of her physical impairments, she experiences depression and anxiety, which then affect her ability to focus and concentrate and prevent her from performing work-related activities.

Petitioner also testified that she sees her primary care physician, Jeffrey Wells, M.D., at the Hannibal Free Clinic, and he prescribes pain medication (hydrocodone) and Savella, which treats fibromyalgia. Plaintiff is uninsured, which is why she treats at the free clinic. At the time of the December 6, 2017 hearing, Plaintiff testified that she had seen a pain management specialist on two occasions, who had prescribed pain medications.

The ALJ found that, although Plaintiff's impairments could reasonably be expected to cause her symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. The ALJ noted that Plaintiff's treatment for fibromyalgia was conservative and routine. The ALJ opined that while Plaintiff had consistently reported that she experienced pain, she had not required aggressive medical treatment, frequent hospital confinement, or surgical intervention. The ALJ stated that she had accounted for Plaintiff's fibromyalgia when she limited

Plaintiff to a range of light work and included multiple postural and manipulative limitations.

Although Plaintiff stated that she had attended appointments for pain management for injections to help with the pain, there is no record reflecting this treatment. The ALJ also noted that although Plaintiff complained of issues with her vision, when tested, Plaintiff's vision was reported to be 20/20 in the left eye, 20/30 in the right eye, and 25/30 bilaterally without corrective lenses. The ALJ found that Plaintiff's testimony that she experienced migraines two to three times a week was inconsistent with her March 2017 consultative examination, at which Plaintiff reported experiencing headaches every five to six weeks. The ALJ found that there was nothing in the record to show that Plaintiff had reported any significant increase in migraines to any healthcare provider. Lastly, the ALJ concluded that although Plaintiff testified that her fibromyalgia affected her memory, her memory was tested at three separate consultative examinations and her memory was determined to be "good" or "normal."

The ALJ also reviewed Plaintiff's activities of daily living, as reported in 2013, which demonstrated that Plaintiff prepares her own meals and performs light household chores. Plaintiff also reported that she goes outside often, drives a car unassisted, and shops weekly. Plaintiff also stated that she was able to handle money, regularly went out on outings with the family, and attended church regularly. Plaintiff was the primary caregiver for her two sons, ages 12 and 10.

The ALJ also reviewed the following opinion evidence in making her

7

determination. Robert Cottone, Ph.D., a non-examining state agency consultant, noted that Plaintiff's limitations appeared more related to her pain issues than mental issues, and he noted that Plaintiff could understand, remember, carry out and persist at simple tasks, and make simple work-related judgments. His opinions were given great weight by the ALJ, who found them to be adequately accounted for by the RFC and consistent with the treatment records.

Thomas Spencer, Psy.D., performed a consultative psychological examination on June 11, 2013, and he diagnosed Plaintiff with major depressive disorder and anxiety disorder. The ALJ gave Dr. Spencer's opinions great weight in reaching the RFC limitations and held that his opinion was reasonably supported by the objective findings on examination, as well as the nature and scope of Plaintiff's treatment for those conditions.

On June 29, 2013, Dennis Velez, M.D., performed a physical consultative examination of Plaintiff. He observed that Plaintiff had full body strength in both upper and lower extremities and observed no limitations in range of motion. Dr. Velez noted a normal clinical examination. However, the ALJ gave Dr. Velez's opinion limited weight because the weight of the evidence supported some limitations in functional capacity, which contradicted Dr. Velez's opinion of no limitations.

In October 2014, Plaintiff also saw Deanna Davenport, F.N.P., who completed a medical source statement of ability to do work-related activities (mental). The ALJ noted that Ms. Davenport, who is a nurse practitioner specializing in rheumatology, was

not an acceptable medical source, had only seen Plaintiff on two occasions, and was unqualified to draw conclusions as to Plaintiff's mental abilities. The ALJ further opined that Ms. Davenport's extreme limitations were not supported by the objective records. The ALJ cited as an example Ms. Davenport's belief that Plaintiff would need a ten-minute break every fifteen to twenty minutes, but the ALJ held that the record was devoid of any support for this level of limitation. The ALJ therefore gave Ms. Davenport's opinion little weight.

The ALJ also gave the opinions of Jan Onik, D.O., little weight. In May 2014, Dr. Onik evaluated Plaintiff for purposes of determining her eligibility for benefits through the State of Missouri. The State found Plaintiff to be disabled. Dr. Onik diagnosed Plaintiff with depression and anxiety and noted that Plaintiff would be incapacitated for a period of three to six months. The ALJ gave the opinion little weight because there was no indication that Dr. Onik had access to, or reviewed, Plaintiff's medical history.

Plaintiff underwent a consultative medical examination on March 25, 2017 with Joseph Starke, D.O. Dr. Starke noted that Plaintiff was able to lift, carry, or handle light objects with mild difficulty; was able to squat and rise with difficulty; was able to rise from a sitting position without assistance, but had some difficulty in getting up and down from the examination table; and had 13/18 on a tender point examination. He observed that Plaintiff displayed a slow but steady and symmetric gait and decreased range of motion in her cervical and lumbar spine. Dr. Starke opined that Plaintiff's symptoms

were consistent with fibromyalgia, but he did not include any specific work-related functions in his report. The ALJ concluded that Dr. Starke's opinions and observations were adequately accounted for by the RFC and were consistent with Plaintiff's treatment record. The ALJ thus gave Dr. Starke's opinions significant weight.

On April 13, 2017, Plaintiff underwent another consultative psychological evaluation conducted by Bryce Gray, Psy.D. Dr. Gray noted that Plaintiff was alert and oriented to person, place and situation; was cooperative and calm; had full affect and direct eye contact; displayed good memory; and was able to spell and do simple mathematic calculation. Dr. Gray opined that Plaintiff appeared to have moderate current restrictions in her daily living activities; had appropriate social skills and the ability to interact with others routinely; and displayed the ability for sustained concentration and persistence in tasks of moderate length. Dr. Gray also concluded that Plaintiff appeared capable of retaining information and effectively carrying out instructions. The ALJ held that Dr. Gray's opinions were given mostly great weight in reaching the RFC limitations, except the ALJ found greater social limitations.

The ALJ also considered the testimony of consulting expert Irving Kushner, M.D., who testified at the second hearing as an impartial medical expert. Dr. Kushner opined that Plaintiff did not have the medically determinable impairment of fibromyalgia. The ALJ gave Dr. Kushner's opinion little weight because he favored an overly-technical definition of fibromyalgia, which did not comport with the weight of the medical evidence. Thus, the ALJ gave Dr. Kushner's opinion that Plaintiff had no functional

limitation no weight.

The ALJ noted the third-party statements submitted by Jason Earnest, Plaintiff's husband, and Barbara Large, Plaintiff's aunt. In 2013, Mr. Earnest reported that he helped Plaintiff with the children, household chores, and other necessary tasks. He stated that he does most of the cooking, goes grocery shopping, and takes care of the family's pets. Overall, Mr. Earnest reported that Plaintiff's quality of life was very limited due to her chronic pain.

In 2017, Ms. Large stated that she helps Plaintiff with cleaning, cooking, and bathing, and Plaintiff is able to shop twice a month for 15 minutes. Ms. Large reported that Plaintiff stayed home and slept most of the day every day, and she opined that Plaintiff's limitations affected every movement Plaintiff made. The ALJ gave these statements little weight because they did not outweigh the accumulated medical evidence regarding the extent to which Plaintiff's impairments limit her functional abilities.

Ultimately, the ALJ concluded that an RFC of light work, with the physical and mental limitations previously described, was consistent with the medical evidence in the record. The ALJ opined that the treatment notes in the record did not support Plaintiff's allegations of disabling pain and mental pain and limitations. The ALJ further noted that the persuasive value of Plaintiff's allegations were weakened by evidence of daily activities and inconsistences between Plaintiff's allegations and the medical records for the relevant period. Thus, the ALJ held that Plaintiff does have severe impairments resulting in work-related limitations, but only to the extent described in the RFC.

Based on the foregoing, the ALJ found that Plaintiff could perform certain light unskilled jobs listed in the DOT (marker, office helper, mail clerk), which the VE had stated that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

In her brief before this Court, Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the whole record because: (1) the ALJ failed to obtain medical source statements from Plaintiff's treating physicians; (2) the ALJ erred in discounting Plaintiff's complaints of pain in light of her activities of daily living; and (3) the ALJ erred when relying on the opinion of Dr. Starke, which included no specific work limitations. Plaintiff asks that the ALJ's decision be reversed and benefits awarded, rather than remanding the case for a second time.

## DISCUSSION

### Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court

"must consider evidence that both supports and detracts from the ALJ's decision.   If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner."   *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."   *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).   A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.   *Id.*   The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration."   *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.   42 U.S.C. § 423(d)(1)(A).   The Commissioner has promulgated regulations, found at 20 C.F.R. § 416.920, establishing a five-step sequential evaluation process to determine disability.   The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.   If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.   A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.   20 C.F.R. § 416.920(c).

13

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.   If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.   If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.   *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).   When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden.   *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**RFC Finding and Weight of Medical Opinions**

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."   *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).   In determining "whether a claimant has the residual functional capacity necessary to be able to work [an ALJ must] look to whether she has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'"   *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir.

2004) (citing *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982)).   However,

"there is no requirement that an RFC finding be supported by a specific medical

opinion."   *Id.*

Here, the ALJ determined that Plaintiff's allegations concerning the intensity,

persistence, and limiting effects of Plaintiff's fibromyalgia were inconsistent with the fact

that she had not required aggressive medical treatment, frequent hospital confinement, or

surgical intervention.   The ALJ opined that Plaintiff had received routine or conservative

treatment, and she had not supplemented her treatment with acupuncture, massage, or

psychiatric counseling.   The ALJ also referenced Plaintiff's daily activities, including the

preparation of her own meals, the performance of light housekeeping chores, driving a

car unassisted, grocery shopping, attending church, and being the caregiver to two sons.

Thus, the ALJ reduced Plaintiff to light work with multiple postural and manipulative

limitations, including the requirement that Plaintiff have a sit/stand option allowing for a

change in position every thirty to sixty minutes.

However, the Eighth Circuit has held, in the context of a fibromyalgia case, that

"the ability to engage in activities such as cooking, cleaning, and hobbies, does not

constitute substantial evidence of the ability to engage in substantial gainful activity."

*Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003) (citing *Kelley v. Callahan,* 133

F.3d 583, 588–89 (8th Cir. 1998)).   Further, the lack of any need for surgery does not

discredit Plaintiff because the American College of Rheumatology ("ACR") does not

recommend surgery for fibromyalgia.   *Id.*   Further, "the only known treatment

for fibromyalgia consists of conservative treatments to include exercise, local heat, stress management, drugs to improve sleep, and analgesics." *Watkins v. Colvin*, No. CIV. 13-2088, 2014 WL 3547017, at *3 (W.D. Ark. July 17, 2014).

Moreover, the limitations provided in the RFC are inconsistent with Plaintiff's medical records and the findings made by the 2017 consulting examinations of Plaintiff, which occurred after remand. Dr. Starke specifically noted that Plaintiff experienced spasms throughout her entire spine; squatted and rose up with great difficulty; experienced some difficulty getting up and down from the examination table; and that his examinations of her range of motion "were all done with pain." Tr. 911. Dr. Starke also noted that Plaintiff reported functional imitations, secondary to pain, as sitting for ten to fifteen minutes, standing for ten minutes, walking for one-quarter of a block, lifting and carrying one pound repeatedly and two pounds occasionally. He did not, however, opine as to specific work-related limitations.

Dr. Gray noted that Plaintiff reported waking up at 6:00 a.m. and getting her children ready for school; resting until 10:00 p.m.; performing self-care routines; attempting to perform household chores; attempting to cook; and complaining that it hurts to both stand and sit. Tr. 916. Dr. Gray opined that Plaintiff had moderate restrictions in daily living activities but was capable of managing her self and her children.

The Court concludes that these examinations, paired with the medical evidence that existed in the record before remand, do not support Plaintiff's RFC because it is

unclear to the Court how the ALJ accounted for her pain and seemingly significant

physical limitations. The ALJ relies heavily on Plaintiff's reported activities of daily

living. However, that function report was completed in 2013. At the second hearing in

December 2017, Plaintiff reported that she and her husband had recently separated and

that she had the children every night and every other weekend. She stated that she drives

two to three times a week; that her aunt or daughter help her with housework her several

days a week; that her children also help with household chores; and that her husband still

goes grocery shopping for her. Plaintiff also reported sitting without discomfort for

about 10 minutes, and the transcript reflects that she alternated between sitting and

standing throughout the hearing.

Overall, it appears to the Court that Plaintiff's activities of daily living are

deteriorating, and the ALJ's heavy reliance upon a dated 2013 function report is

inconsistent with the medical records. In its Order remanding the case, the Court

"encouraged" the ALJ to contact Plaintiff's treating sources "for functional assessments

as to how her impairments affect her ability to engage in specific work-related activities."

*Earnest*, 2017 WL 2535674, at \*10. Instead, the ALJ directed Plaintiff to undergo two

consultative examinations. Although an ALJ may properly rely on an agency

physician's opinion when it is consistent with other medical evidence, *Mabry v. Colvin*,

815 F.3d 386, 391 (8th Cir. 2016), and the Court acknowledges that there is no

requirement that an RFC finding be supported by a specific medical opinion, the Court

concludes that the consultative examinations of Plaintiff did not sufficiently supplement

the record and, in turn, the RCF.   Thus, there was an absence of sufficient medical

evidence demonstrating Plaintiff's functional abilities, and that deficiency remains in the

present medical record.[8]

Based on the foregoing, the Court finds that the Commissioner's decision is not

supported by substantial evidence on the record as a whole.   "Where the total record

convincingly establishes disability and further hearing would delay the receipt of

benefits, this court has ordered the immediate award of benefits without further

delay." *Blakeman v. Astrue*, 509 F.3d 878, 890 (8th Cir. 2007).   However, that standard

has not been met here.   Therefore, the Court will reverse and remand the

Commissioner's decision.

Upon remand, the Commissioner should focus on Plaintiff's functional limitations

and obtain medical source statements from Plaintiff's treating providers.   The Court is

aware that upon remand, the ALJ's decision as to non-disability may not change after

addressing the deficiencies noted herein, but the determination is one the Commissioner

must make in the first instance.   *See Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL

4713280 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

Plaintiff first applied for benefits in 2010, and this case was previously remanded.   It is

---

[8]     The Commissioner argues that Dr. Wells in a treatment note stated "I do not
participate in disability determinations."   Thus, the Commissioner argues that "even if
the ALJ had attempted to solicit an opinion from a medical provider at the Hannibal Free
Clinic, such an effort would have been unavailing."   ECF No. 23 at 11.   This, however,
does not change the Court's determination that the consulting examinations failed to
provide evidence supporting the limitations contained in the RFC.

now 2019, and the Commissioner is urged to begin proceedings without delay and

resolve this case as soon as possible.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**REVERSED and the case is REMANDED** for further proceedings consistent with this

Memorandum and Order.

A separate Judgment shall accompany this Memorandum and Order.


        _Audrey G. Fleissig_
        AUDREY G. FLEISSIG
        UNITED STATES DISTRICT JUDGE

Dated this 23rd day of September, 2019.